UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HERCULES LLC and BLAZER PROPERTIES LLC,

       Plaintiffs,

v.

GREEN THUMB FARM TRUST; NOEL D. CLARK, JR.; ESTATE OF BETSY LYNN CALLAWAY,

       Defendants.

Case No.: 2:22-cv-230

# COMPLAINT

1. This action arises from the defendant's willful, bad-faith breach of the parties' settlement agreement.

## Parties

2. Plaintiff Hercules LLC ("Hercules") is a Delaware limited liability company with its principal place of business in Delaware. Hercules's sole member is ISP Global Technologies, Inc., which is a Delaware corporation with a principal place of business in Delaware.

3. Plaintiff Blazer Properties LLC is a Delaware limited liability company with its principal place of business in Kentucky. Blazer's sole member is Ashland LLC, a limited liability company organized and existing under the laws

of Delaware, with a principal place of business in Kentucky. Ashland LLC's sole member is Ashland Chemco Inc., which is a Delaware corporation with a principal place of business in Delaware.

4. Defendant The Green Thumb Farm Trust ("Trust") is a trust purportedly organized and existing under the laws of the state of Florida.

5. Defendant The Estate of Betsy Lynn Callaway ("Estate") is a citizen of the estate of Florida, where Betsy Lynn Callaway passed away.

6. Defendant Noel D. Clark, Jr. ("Clark") is natural person and a citizen of the state of Florida. He is the sole trustee of the Trust. He is also the sole personal representative of the Estate.

## Jurisdiction and Venue

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because this action is between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper, because all parties have previously consented to jurisdiction and venue in this Court for any matters affecting the rights and obligations of the parties under the settlement agreement upon which Plaintiffs sue.

9. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), because the property that is the subject of the parties' settlement agreement and this action is located in De Soto County, which is situated within this judicial district.

**Facts**

10. Clark and Hercules were parties to a lawsuit styled <u>Clark v. Ashland, Inc.</u>, 13-cv-00794-JES-DNF (M.D. Fla.) ("Prior Lawsuit").

11. On October 1, 2021, the Trust and Clark on the one hand, and Hercules and Blazer on the other hand, entered into a Confidential Settlement Agreement and Release ("CSAR") for the purpose of settling the Prior Lawsuit. The Trust and Clark were represented by competent real estate counsel in connection with the negotiation of the CSAR.

12. Pursuant to the CSAR, the Trust was obligated to, among other things, convey (i) to Blazer a 40-acre parcel of real property located at 3165 SW County Road 760, Arcadia, Florida 34266 ("Remaining Property"), and (ii) to Hercules, an executed stipulation of dismissal of the Prior Lawsuit with prejudice and without costs. In exchange, Hercules would, among other things, pay to the Trust $134,000.

13. The closing on the Remaining Property was to occur pursuant to a Remaining Property Agreement of Sale ("RPAS") between Blazer and the Trust,

which agreement was executed contemporaneously with the CSAR, on October 1, 2021.

14. Pursuant to the CSAR and the RPAS, the closing on the Remaining Property was to occur on the later of December 10, 2021, or the first day after certain conditions in the RPAS had been met.

15. Upon the closing on the Remaining Property, certain releases contained in the CSAR and provided by Clark, the Trust, and the Estate, were to become effective.

16. Among the conditions that the Trust was required to satisfy in order to effect the closing on the Remaining Property were to send to the parties' escrow agent (i) a "recordable Trustee's Special Warranty Deed and a recordable Standard Form Quitclaim Deed" for the Remaining Property (the "Deeds"); (ii) a duly executed closing statement; and (iii) anything else reasonably required by the escrow agent to effect the closing.

17. The Trust was required to have delivered the Deeds to the parties' escrow agent contemporaneous with its execution of the CSAR and RPAS, *i.e.*, on October 1, 2021.

18. The Trust did not convey the Deeds to the parties' escrow agent on October 1, 2021, and it still has not done so.

19. The Trust, through its sole trustee, Clark, has advised Hercules and Blazer that it has no intention of closing on the conveyance of the Remaining Property to Blazer pursuant to the CSAR and RPAS.

20. Hercules and Blazer have fully performed under the CSAR and RPAS, including by depositing the purchase price for the Remaining Property with the parties' escrow agent. The escrow agent is still holding the purchase price on account of the Trust's refusal to close.

21. Blazer remains ready, willing, and able to close on the Remaining Property pursuant to the CSAR and RPAS.

22. The CSAR provides:

> In the event of an action or proceeding to enforce this binding Agreement or the binding . . . Remaining Property Agreement of Sale, the nonbreaching party, so long as that party has not defaulted on any of its obligations under this Agreement. . . and the Remaining Property Agreement of Sale, shall be entitled to specific performance, and to recover from the other party reasonable attorneys' fees, court costs, and disbursements incurred in connection with such action.

### Count I
### (Specific Performance)

23. Plaintiffs hereby incorporate paragraphs 1 through 22 as if fully set forth here.

24. The CSAR and RPAS are valid contracts for, among other things, the sale of specifically described real property, i.e., the Remaining Property.

5

25. Blazer and Hercules have each performed all of their obligations under the CSAR and RPAS.

26. As set forth above, the Trust has breached the CSAR and RPAS.

27. Blazer and Hercules have no adequate remedy at law with respect to the Trust's breaches of the CSAR and RPAS.

28. Specific performance is warranted where, as here, a defendant has breached a contract for the sale of unique real property. In fact, the CSAR and the RPAS expressly allow the non-breaching party to seek specific performance in the event of default.

29. Blazer and Hercules are therefore entitled to specific performance.

WHEREFORE Plaintiffs pray for the following relief:

(a) judgment in favor of Plaintiffs and against Defendant;

(b) an order directing the Trust to convey the Remaining Property to Blazer pursuant to the CSAR and RPAS;

(c) an order declaring that upon the conveyance of the Remaining Property to Blazer pursuant to the CSAR and RPAS, the releases of Clark, the Trust, and the Estate, contained within the CSAR are effective;

(d) an order directing the Trust to deliver to Hercules a stipulation executed by the Trust dismissing the Prior Lawsuit with prejudice and without costs;

(e) an award of Plaintiffs' reasonable attorneys' fees, court costs, and disbursements pursuant to the CSAR; and

(f) any other relief in Plaintiffs' favor as this Court deems just and equitable.

By: */s/ Mark M. Barber, Esq.*
Mark M. Barber, Esq. (FBN 573701)
Email: mark.barber@dinsmore.com
Secondary: kelly.smith@dinsmore.com
Secondary: eileen.garvey@dinsmore.com
One Tampa City Center
201 N. Franklin Street, Suite 3050
Tampa, FL 33602
T: (813) 543-9848 / F: (813) 543-9849
*Attorneys for Plaintiffs Hercules LLC
and Blazer Properties LLC*